2018-10438 Marily Flores v. TX Tech It may please the court. Good morning, I'm Jason Pach on behalf of the appellant. Your Honor, this case is not about a free pass as the District Court chose to use those words to describe what Ms. Flores was looking for. This is about equal access for a student that has disabilities and has a documented history of disabilities. As soon as Ms. Flores received accommodations from Texas Tech and informed her department of these accommodations, she had a target on her back. She was in a program, a positions assistance program, where the program director did not believe that a person with her disabilities would be qualified to be a positions assistant. She proceeded through this program for almost to completion, just a few months away from graduation, was successful in this program up until this point. Even though she dealt with these, you know, being told by her program director that she didn't respect the staff by asking for accommodations, asking her who do you think you are because she asked for accommodations for her disability, being required to travel 300 miles to take her exams when other students without disabilities were not required to do so. So we reach this point where she is taking this exam in El Paso just a few months short of her graduation. She has been ill, she's taking medications that have essentially neutralized her disability medications. She's suffering from her effects of ADHD that she usually does not suffer from. And if this case would have been allowed to go into the discovery phase, we would have showed evidence that individuals who have the type of disability that she has, that this type of behavior is not uncommon where you panic, you don't remember certain things. And what the district court failed to realize is that her taking this cellular phone into an exam was not unrelated to her disability. It was a direct result of her disability. And what the district court said was that her claim under the Rehabilitation Act had to fail because her disability was not the sole reason for her dismissal. And we strongly disagree with that. First of all, a denial of accommodations under the Rehabilitation Act does not require that the dismissal is solely based on her disability. It was here, but the law does not require that because we're talking about accommodations here. But putting that aside, the district court was incorrect in that Ms. Flores is alleging that her accidentally taking this cell phone into an exam room was a result of her disability. Her disability can result in this type of behavior and this type of situation where she panicked and forgot that she had a phone in her pocket and didn't know how to resolve that issue. What extent do we worry about the fact that she was unable to participate in the hearing properly, that she didn't defend herself properly at the hearing, that she had over a month to prepare? If that wasn't enough time to prepare, what would have been enough? Well, it's really not about the amount of time that she had to prepare. She was given misleading information about what to expect at this hearing. She wasn't aware that she was going to be asked these types of questions. She wasn't aware... What do you think you would do at a hearing? I know what I would do at a hearing, but based on... She had never been through a process like this before. But you'd be asked questions about why did you cheat and why did you do this and how did this come about, and you'd be given a chance to give an explanation. Well, and had she been allowed to submit her statement in advance, which she had asked to do, then that issue would have been avoided. But they want to test her credibility and do... There's no rule that says that as a matter of ADA, you can't have a hearing. No, there's no rule that says you can't have a hearing, but under ADA and the Rehabilitation Act, you have to have certain accommodations if a student is entitled to that. But she didn't... Well, I guess she requested to submit it in writing. Anything else that she requested? She didn't specifically request any other accommodations for that hearing, but the law doesn't require her to do so. Once the university is aware that she requires accommodations, they have to provide her with reasonable accommodations. You led with your statement that you believe, or she believed, that her supervisor didn't think she was qualified to be a physician's assistant. Solely based on her disability, yes. Was that... That issue's not before us, whether she meets the qualifications for physician's assistant, is it? No, it's not. However, that was used as an argument at her hearing. Her program director actually said to the hearing panel that she doubted whether or not Ms. Flores was able to be a physician's assistant based on her disabilities. Well, but was that not... Or is your position that that's not... She can't doubt that or wonder if she's... If you can't communicate on the spot, that might make it difficult to be... I'm not saying that she couldn't be qualified, and we don't have to decide it, but for someone to make that statement is not discriminatory, is it? If they're making a decision to dismiss Ms. Flores from this program based on her disability, I do believe that that is discriminatory. That is exactly what the program director asked the panel to do, was to take that into account. If we were allowed to go into discovery, we could take the depositions of those panel members and ask them what role, what impact that had on their decisions. But it was not before the panel whether or not her disability would prevent her from becoming a physician's assistant. Keep in mind, just because you graduate with a degree from a physician's assistant's program does not mean that you're going to become a physician's assistant. That's a licensed occupation, and the state of Texas has a licensing body in place to make a determination as to whether or not an individual has the... Whether or not their disability would prevent them from becoming a physician's assistant. That's not the role of a university, and it certainly wasn't the role of this panel who was asked to decide whether or not she cheated during the exam. Now, Ms. Flores, at the time of this hearing, you know, she, in preparation for this hearing, she was told to expect this to be like a trial. Meaning, in her mind, she expected that they would call witnesses and would be able to ask the questions of those witnesses, and she was not prepared that, you know, that she was going to essentially be interrogated. She was not aware that she could have an advisor there with her. Certain accommodations should have been made. Don't they have the rules posted for these disciplined hearings just like they do for Title IX hearings and all these other kinds of hearings? They have rules that you can have an advisor or whatever. You can make an inquiry. That's very common. These universities have... That is common. That is common, and I assume that they did here. However, she was relying on the statements that was made to her by the conduct officer that she met with before the hearing, and that's what she was... But there's nothing discriminatory about having a hearing at the university like this. Is there? Not per se, no. No, it's... Well, if she violated the rule, and it's undisputed that she violated the rule, then why can't she just be... Why was the decision of the school wrong? Because what the school is saying is that she cheated. What Ms. Flores is saying is different than that. She does not admit that she cheated. In fact, she absolutely says that she did not cheat. She even offered to show the proctor at the time of the exam, she offered to show her her phone to show her that she did not cheat, that she had nothing on there to use to cheat. What Ms. Flores is guilty of doing is as a result of her ADHD, she panicked, forgot to remove the phone from her pocket, went into an exam with that phone. When she realized that the phone was in her pocket, she attempted to turn it off. And as a result of that, she was brought up on charges of cheating. We know that she had a target on her back from day one. We know that we have a program director in this case who was looking for any opportunity to remove her from the program. Essentially, this was a pretext to remove... What's the evidence of that? There is no evidence. We have a sense of that. She may feel that way, but what do we have that says that? Well, and that's a good question because there is no hard evidence, considering we haven't been able to get into discovery on this case, but what we do have are the statements made by the program director. The statements made... No, the district court dismissed it because you hadn't plausibly stated a claim, and what I'm trying to hear from you is an articulation of a plausible claim here that was in those pleadings. Right, and what the district court said was that we failed to state a claim on the Rehabilitation Act claim because there was a basis that the school may have used to dismiss her, and that what we're saying is that that is directly related to her disability. You can't separate her disability from her taking the cell phone into the exam room. They're in connection with each other. If she had not had this disability, she would not have taken it. She would not have forgotten it. You're suggesting that she needed the phone for her disability. Are you saying that? No. Are you saying that no, that she was disabled and not responsible for breaking the rule because she didn't realize that she had the phone? I'm not saying that she needed her phone for her disability. I'm saying that as a result of her disability, she forgot that she had the phone in her pocket, essentially, and we would have doctors who would back up that statement, but what the district court said is that we didn't state a claim because that wasn't, in their mind, her disability was not the entire basis for her dismissal, that it was related to the cell phone, and we don't think that, first of all, that's not the appropriate standard to use, and we cited that in our briefs, but even if that isn't the appropriate standard to use, it's just simply not true. So if that isn't true, why not allow us to go back, and if the court had that concern, if this court had that concern, why not allow us to amend our complaint to make that more clear? But what would you do in your new complaint? We would allege that having the phone was a direct result of her disability. We would allege that her dismissal was entirely related to her disability. Why would you have to amend to do that if it's in the original complaint? If it's not in the original complaint, you didn't file a plausible claim. I'm sorry, Mr. Governor? I said, you're talking about the things that you would add, which tells me they weren't in the original complaint, and we're here on the original complaint, and if you haven't put those, if you've got to add those to get a plausible complaint, you're basically conceding that you did not have a plausible, and so your case boils down to the failure to allow you to amend. Well, we do believe we had that in the complaint. We do believe our complaint— Why do you have to amend to add those things? Well, based on the judge's order from the district court, apparently he didn't believe it was— But did you ask for leave to amend? We did, and in our opposition to the motion to dismiss, we did ask for leave to amend if the court felt that there was something that needed to be amended. Now, we believe that our— But when he entered his ruling, then you didn't seek to amend that, to respond to that? No, he—in his decision, in his order, he specifically inserted a footnote denying our leave to amend. With that, I'll reserve the remaining time. Are you going to discuss Reichenbacher when you return? Sure. May it please the Court. My name is Matthew Diehl, and I'm here on behalf of the Appellee, Texas Tech University Health Sciences Center. There are two key issues in this case. Number one, did the appellant fail to state a claim under the Rehab Act? And number two, did the district court follow the three-part Georgia test when it dismissed the appellant's ADA Title II claim based on sovereign immunity, or in the alternative, based on a failure to state a claim? Turning first to the Rehab Act, in order to prove a Rehab Act violation, a party usually has to show that they were subjected to discrimination solely based on their disability. The appellant can't do this because she admitted that she violated program policy when she brought her phone into the test, when she removed it from her pocket, and she looked at it long enough to be photographed doing so by the exam proctor. She's arguing that her ADD caused her to bring her phone into the test, but to make that suggestion that ADD causes people to bring their phone into the test, as the district court found, simply isn't plausible. She, Ms. Flores, although in her first amended complaint makes no mention of a failure to accommodate, in fact those words don't appear together anywhere in the complaint, and the district court found that she didn't clearly articulate such a claim, she has pivoted and is trying to salvage her Rehab Act claim and sidestep that strict causation standard by arguing that the university failed to provide her with accommodations. And she argues that in two contexts, first in the testing sphere, and then in the disciplinary process that followed. With regard to testing, Ms. Flores' main complaint now is that she had to take her tests in El Paso instead of taking them in Midland. She gives us the reason in her complaint when she says that that's where special proctors were located, which are the staff members who specialize in academic and disability support. She, of course, omits from her complaint the real reason, but she hints at it when she acknowledges that she took all of her tests in El Paso, all of her previous tests, not just this one. So she's arguing that the testing location made the other accommodations ineffective, but she also acknowledges, again, she took all of her tests in El Paso, and up until this point, up until getting caught with her phone in a test, she claims that she had an unblemished academic record. So that shows that the testing location itself had nothing to do with the other accommodations, and her questions didn't make them ineffective whatsoever. Let me ask you a question about how they detected that she had, that she was carrying the phone. As I gather, she had taken the phone out at a testing, at a table or whatever, where she's taking the exam, and she held it out long enough for someone to observe it and then get a camera and take a picture of it? That's correct, Your Honor. Ms. Flores... How long did she have it out? The complaint doesn't state, but she claims that she, and this is in her complaint, that she felt her phone buzzing in her pocket, so she had to, there's an exam proctor in the room monitoring the test, who takes her phone out and is able to snap a picture of Ms. Flores looking at her phone. So, however long that takes. Okay. Moving to the disciplinary sphere, Ms. Flores claims that accommodations were never provided when they should have been, even though they were never requested in the first place. And she's trying to argue that the university is under some ongoing obligation, all on its own, to sui sponte and modify its disciplinary procedures for her, because we knew that she had ADD, but there was no request for any further modifications beyond the testing atmosphere. There's no law to support that proposition. She didn't request accommodation to submit a written statement because she couldn't speak in public or something like that. That accommodation was not requested. And the... I take, she had been taking the examinations previously in the same circumstances. That's my understanding based on the complaint, Your Honor. And how many times did she have examinations in El Paso? The complaint doesn't specify, but she uses the plural form of examinations, and she mentioned in her briefing before this Court that she took all of her previous tests there. What's important, and this comes from a footnote in this Court's opinion, in Shaik v. Texas A&M University College of Medicine... Let me ask one other question to be sure I understand it. She's taken these examinations in El Paso, rather than Lubbock, because of her disability? No, Your Honor. She states... Or is this an El Paso operation of Texas Tech? I'm not clear about that. It's not in the complaint. She was in El Paso doing her clinical rotations anyway, and I believe there's a satellite campus there, but of course that's not in the complaint. And her complaint says that she was there because that's where the special proctors were located. Okay. Turning to the disciplinary sphere and the fact that Ms. Forrest never requested any accommodations whatsoever, it's not enough for the University just to have knowledge of the student's condition, because we did know that she had ADD in this case, and we provided the testing accommodations. The University has to have knowledge of the individual's desire for further accommodations. There was no knowledge of her desire for any accommodations, in this case, beyond the testing atmosphere. The University, and this comes from a lower-course decision in Duncan v. UT Health Science Center at Houston, another case cited by the opposition, the University is not required to guess as to what further accommodations might be needed. That responsibility, it's an interact... Once the student comes forward with their need for accommodations and their condition, it's a shared, interactive process. And especially with a condition like ADD, that's not open, obvious, and apparent, the burden more falls on the individual in consultation with his or her physician to determine what type of accommodations are necessary in any given environment. The point is that Ms. Forrest, in this case, and it's omitted from her petition, and it makes a failure to accommodate... It's fatal to her failure to accommodate claim is that she never asked for any accommodations beyond those that she received. She never asked for accommodations with regard to the testing. Or, excuse me, with regard to the discipline process. And, again, to be liable for denying accommodations, those accommodation requests have to be reasonable, but there could be no assessment as to the reasonableness of anything Ms. Forrest asked for because she didn't ask for anything at all. Tell me about the panel. How is that constituted? How are those proceedings? Ms. Forrest received the due process as all students do, and the type of circumstances were there. What were they? I'm not questioning the galley of it. I just don't understand. Right. And this all comes from her complaint. Ms. Forrest received notice of the allegations against her. She receives the scheduled hearing, and that's more than 30 days in advance so that she can prepare. She is advised by the student conduct coordinator to review the student manual, the student handbook, so she'll have an understanding of how that process goes. She got her 30-minute hearing. Who constitutes this board or panel or whatever? The student conduct committee or student conduct panel is composed of both students and professors. Okay. And what was the disability argument made to them? Correct. Ms. Forrest in her complaint admits that she had a prepared written statement that she read aloud to that panel, and she was asked questions by that panel. I see. And she also exercised her right to appeal that decision, the recommendation that was made by the panel. That appeal went to the provost or somebody? The dean of the college. It's not in her complaint, but yes, it's elevated beyond the panel. The panel makes a recommendation, and then it's elevated to an individual. Okay. I would like to turn to ADA Title II. Ms. Forrest wants this panel to rule that Congress validly abrogated the state's sovereign immunity in cases concerning discrimination in public education. The district court did not reach this step, which would be step three of the Georgia test, because it found no Title II violation, and then it moved to step two of the Georgia test, and also finding that there was no underlying constitutional violation. The one that, from her complaint, that most mirrored a possible constitutional violation was the due process allegations. But if we affirm the dismissal, we don't have to address the abrogation argument? Excuse me? If we affirm the dismissal, I assume we don't have to address the title, the abrogation claim? If the court were to affirm the dismissal, the rehab act came, I think the court would have the prerogative to then assess the Title II claim. But the district court did it on both grounds for Title II. Correct. You could just do it on failure to state a claim, just to be parallel to rehab. Correct. So you don't have to decide as the district court about the sovereign immunity issue? That's correct. And I think that's one of the, and probably why this case was selected for oral argument, because I think the court placed its emphasis on sovereign immunity. But I think what helps the district, to save the district court's opinion, is that they also dismissed based on 12b-6. And I think the conflict there, and it's in the court's opinion, is that they followed guidance from this court in U.S. v. Ramming to consider a 12b-1 challenge first, and that would be the sovereign immunity, before moving on to any other 12b challenges. But that's the issue that we've not decided in other cases, and we're like some other circuits who have not decided it yet, right? Right. I think they're just using that kind of general guidance to consider 12b-1 jurisdictional challenges before moving on to consider the underlying merits of the case. And I think, and in this court's opinion in Hale v. King, or this circuit's opinion in Hale v. King, where they kind of direct lower courts when they're considering Title II claims to consider Step 1 of the Georgia test first, did the plaintiff state a viable claim under Title II before? Step 1 is the same as a regular 12b-6. Exactly. Exactly. And I think that's what really saves. The basic principle of constitutional avoidance teaches that we don't do that. Those are administrative suggestions of purgatory language from us about running the district court. But as a practical matter, when you have a simple, straightforward claim that's here and it addresses large questions about abrogation to reach the place of education, the hierarchy of claims, da-da-da-da-da, constitutional avoidance, we would have to be really reaching to get up to that. I agree. And if we reversed, then perhaps we would still be. Even if we reversed the thing and sent it back, why should we do that when it may never get past the liability stage? There's an awful lot of briefings going down. Interesting, but... I agree with you, Your Honor. I don't think this Court has to reach that third step of the Georgia test. Well, make no mistake about it. We don't decide things when they're here. We don't duck them, but we don't chase them either. I think the ultimate conclusion here reached by the district court is sound because it dismissed alternatively based on 12b-6. I think that had they dismissed the Title II claim based on 12b-1 alone, I think that would be cause for concern. But that's not what happened here. We know that they assessed the underlying merits of the Title II claim because they dismissed based on 12b-6. Do you have anything else, Counsel? Unless there are further questions from the Court, I'll yield the remainder of my time. Thank you. Just to address one comment that Texas Tech has made here, Ms. Flores did ask for accommodations for this hearing.  She asked to be able to provide this statement. Is that in the complaint? Specifically that that was a specific request for accommodation? No. That she asked to submit this statement? Yes. That was in the complaint. But she spoke to this conduct officer about her disability. She explained to the conduct officer about her behavior and how that is related to her disability. And she asked to be able to provide this statement in advance. But did she say it was accommodation because it's difficult for me to be in a hearing and answer questions? I don't know if she said that or not. That's not in the complaint. That is not in the complaint. What is in the complaint is that she asked that she have a panel of people who at least one student who had ADHD and the rest of the panel have an understanding of the effects of ADHD. And I know that Texas Tech has said that they pull the panel members to see if they knew what ADHD was. But that's not the same thing as having an understanding as to the types of effects that ADHD has on a person. Are you arguing that the state facility has to provide two levels of appellate review, administrative review of this decision? That they have to put people with disabilities on those panels or what? No, I'm not saying that the school is required to do that. All I'm saying is that she did ask for accommodation. So Texas Tech... What does that mean? She put in a written statement. What else? What was she deprived of? She was deprived of being told what type of hearing to expect. She was essentially misled into believing that she was going to have a different type of hearing than what she actually had. Why was she misled? This is in the student code, as I recall, Texas Tech. Most of the state universities have a rare prescribed procedure. And that's why I asked the earlier question that's put out to the students and so on and so forth as to what happens. They allow students to participate in these. So it's a good parity to ensure that the student's situation is fully understood by a co-student, etc., etc. And then there's a review from that to the dean or usually the provost. That's a standard procedure in universities. You're asking for something that I don't quite understand. What I'm alleging is that Ms. Flores was misled by the conduct officer that she spoke with to prepare for the hearing. You're saying that they didn't provide accommodations due under the Disabilities Act in the way they afforded a hearing? Even before then. I think that the issue that we're getting away from is the fact that what this boils down to... Getting away from? I haven't heard the issue yet. The issue is that the district court dismissed this case because she admitted that she brought her phone into the exam room and that that was a violation of the rules. The issue that the court didn't address is the fact that the reason that occurred was because of her disability. In her written statement to the panel, she explained that her version of this and her disabilities, I'll take it. Is that correct? She, in her written statement, did state that this was a result of her disability. In your pleadings, I think you plead that, don't you? I believe so, yeah. That is in the complaint. What we're alleging is that this hearing should have never even taken place. There should have never even been charges that were brought up. Had the school recognized that this was a manifestation of her disability, there shouldn't have ever been... That sounds very much like you're simply saying that the fact that they took any action as a result of her violation of the rule in and of itself was a failure of accommodations. I'm not saying that they weren't entitled to have a hearing, that they weren't entitled to take the steps that they took, had there been appropriate accommodations made along the way. Thank you. Thank you.